Citation Nr: 1522726 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-30 643 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Little Rock, Arkansas


THE ISSUE

Entitlement to an initial rating in excess of 30 percent disabling for a depressive disorder, claimed as a personality disorder. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

T. Susco, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, served on active duty from December 1972 to April 1976. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Little Rock, Arkansas, which, in pertinent part, granted service connection for a depressive disorder, to include a personality disorder, and assigned an initial disability rating of 30 percent. The Veteran has expressed disagreement with the initial disability rating assigned. 

In January 2014, the Veteran and his wife testified at a Board videoconference hearing before the undersigned Veterans Law Judge. A copy of the hearing transcript is associated with the claims file. 

In evaluating this case, the Board has not only reviewed the physical claims file, but has also reviewed the file on the "Veterans Benefits Management System" and on the "Virtual VA" system to ensure a complete assessment of the evidence.


FINDINGS OF FACT

1. For the entire rating period on appeal, the Veteran's service-connected depressive disorder has been manifested by symptomatology more nearly approximating occupational and social impairment with reduced reliability and productivity due to such symptoms as: disturbances of motivation and mood, recurrent anxiety and panic attacks, abnormal speech patterns, memory impairment, and difficulty in establishing and maintaining effective work and social relationships. 

2. For the entire rating period on appeal, the Veteran's depressive disorder has been not been manifested by symptomatology more nearly approximating occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; spatial disorientation; and inability to establish and maintain effective relationships.


CONCLUSION OF LAW

Resolving all reasonable doubt in favor of the Veteran, for the entire rating period on appeal, the criteria for an initial disability rating of 50 percent, but no higher, for depressive disorder have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.125, 4.126(a), 4.130, Diagnostic Code 9434 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veteran Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

Here, as the appeal arises from the Veteran's disagreement with the initial disability rating assigned following the grant of service connection for depressive disorder, no additional notice is required. Once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); VAOPGCPREC 8-2003 (interpreting that separate notification is not required for the "downstream" issue of initial rating); 38 C.F.R. § 3.159(b)(3)(i) (2014) (reflecting that there is no duty to provide VCAA notice upon receipt of a notice of disagreement).

With regard to the duty to assist, VA has made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that have been associated with the claims file include VA and private treatment records, a September 2010 VA examination report, and the Veteran's statements. 

As mentioned above, the Veteran was afforded a VA examination in September 2010 in connection with the claim for service connection for depressive disorder. When VA undertakes to provide a VA examination, it must ensure that the examination is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The VA examination is found to be adequate for ratings purposes of the issue on appeal. The VA examiner reviewed the Veteran's psychiatric history and current symptoms, made clinical observations, and rendered opinions regarding the severity of the disability. In addition, the VA examiner addressed all the relevant rating criteria for rating depressive disorder, including the functional impact of the Veteran's disability upon his occupational and social functioning. 

As such, the RO has provided assistance to the Veteran as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. The Veteran has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide this appeal. Mayfield, 444 F.3d 1328. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duties to notify and assist in the development of the claim. 

Disability Ratings - Laws and Regulations

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2014). 

In evaluating a disability, the Board considers the current examination reports in light of the whole recorded history to ensure that the current rating accurately reflects the severity of the condition. The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The medical as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 38 C.F.R. §§ 4.1, 4.2, 4.10. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in the veteran's favor. 38 C.F.R. § 4.3. 

When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

VA is precluded from differentiating between symptomatology attributed to a non-service-connected disability and a service-connected disability in the absence of medical evidence that does so. Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam), citing Mitchem v. Brown, 9 Vet. App. 136, 140 (1996). The reasonable doubt doctrine dictates that all symptoms be attributed to the Veteran's service-connected disability. See Mittleider, 11 Vet. App. at 181. 

Depressive disorder is evaluated under the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130, Diagnostic Code 9434. Under the General Rating Formula for Mental Disorders, a 100 percent rating requires total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation, or own name. 

A 70 percent rating requires occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); or inability to establish and maintain effective relationships. 

A 50 percent rating requires occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing effective work and social relationships. 

A 30 percent disability rating requires occupational and social impairment with an occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, or recent events). 

The Court has held that Global Assessment of Functioning (GAF) scores are a scale reflecting the "psychological, social, and occupational functioning of a hypothetical continuum of mental health-illness." See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); Richard v. Brown, 9 Vet. App. 266 (1996) (citing the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL FOR MENTAL DISORDERS (4th ed.), p. 32). 

GAF scores ranging between 61 and 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. 

Scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). 

Scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

The Court in Mauerhan v. Principi stated that "when evaluating mental health disorders, the factors listed in the Rating Schedule are simply examples of the type and degree of symptoms, or their effects, that would justify a particular rating; analysis should not be limited solely to whether a veteran exhibited the symptoms listed in the Rating Schedule. Rather, the determination should be based on all of a veteran's symptoms affecting his level of occupation and social impairment." See Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). The lists of symptoms under the Rating Schedule are meant to be examples of symptoms that would warrant the disability evaluation, but are not meant to be exhaustive. Id. 

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence where appropriate and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim. 

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994).

Increased Rating for Depressive Disorder - Analysis

The Veteran contends that his depressive disorder is manifested by more severe symptomatology that contemplated by the 30 percent disability rating current assigned. Specifically, the Veteran indicates that his depressive disorder is manifested by symptoms of irritability, anxiety, depression, apathy, anger, forgetfulness, and suicidal ideation. 

After a careful review of all the evidence of record, lay and medical, the Board finds that, for the entire rating period under appeal, the Veteran's depressive disorder has been manifested by symptomatology more nearly approximating occupational and social impairment with reduced reliability and productivity due to such symptoms as: disturbances of motivation and mood, recurrent anxiety and panic attacks, abnormal speech patterns, memory impairment, and difficulty in establishing and maintaining effective work and social relationships, consistent with a 50 percent rating under Diagnostic Code 9434; as such, the Board finds that an initial disability rating of 50 percent, but no higher, is warranted. 38 C.F.R. § 4.130. 

The record contains many treatment records encompassing the Veteran's course of treatment during the appeal period. These records, taken together, describe a consistent picture of the Veteran's disability as manifested by his depressive disorder symptoms. As such, the Board will summarize the Veteran's treatment records noting the course of the Veteran's depressive disorder symptoms during the appeal period, and any significant deviations during this period. See Gonzales, 218 F.3d 1378.

Private treatment records dated in March 2010 indicate the Veteran presented with symptoms of depression and anger. A private treatment record dated March 8, 2010, indicates that the Veteran was depressed because of medical bills. A private treatment record dated March 15, 2010, indicates that the Veteran was exhibiting self-destructive behavior, including punching a wall in response to a difficult interaction he had with his daughter. 

In a July 2010 VA treatment record, the VA clinician indicated that the Veteran presented with symptoms of depression and anger that caused a strain of his family relationships. The VA clinician indicated that the Veteran presented with no current suicidal ideation. 

In the September 2010 VA examination report, the VA examiner indicated that the Veteran presented with mild, infrequent symptoms of depressed mood and social isolation. The VA examiner also indicated that the Veteran was casually groomed, and presented with a cooperative and appropriate affect, normal speech and thought processes, intact memory, and adequate insight and judgment. The VA examiner further indicated that the Veteran presented without significant anxiety, dysphoria, or disorientation, and denied delusions, hallucinations, and suicidal or homicidal ideations. The VA examiner assigned a GAF score of 60. 

In a July 2011 VA treatment record, the VA clinician indicated the Veteran presented with rapid, circumstantial, and tangential speech; an easily irritated mood; and a loosely associated thought process. The VA examiner also indicated that the Veteran was casually groomed, and presented with a happy affect. The VA examiner further indicated that the Veteran denied delusions, hallucinations, and suicidal or homicidal ideations. The VA examiner assigned a GAF score of 50. 

A September 2011 statement from the Veteran's private psychologist reflects that the Veteran had sought treatment for major depressive disorder and generalized anxiety since August 2006, and specifically identified the Veteran's dysfunctional relationship with his three daughters as a source of aggravation of his psychological symptomatology. The private psychologist reported that the Veteran demonstrated two instances of suicidal ideation. First, the private psychologist noted an August 2006 treatment record that provided a diagnosis of "Major Depressive Disorder, Recurrent, with Suicidal Episodes." Second, the private psychologist noted the March 8, 2010 treatment record where "again, he mentioned that 'suicide was the only way out.'" The Board notes that the August 2006 treatment record referenced by the private psychologist noted symptoms of insomnia, concentration deficit, "irritable" and "not suicidal" and indicates Major Depressive Disorder, Recurrent, with Suicidal Episodes; however, the March 8, 2010 treatment record contains no mention of suicidal ideation. 

In a January 2012 VA treatment record, the VA clinician indicated the Veteran presented with rapid, circumstantial, and tangential speech; an anxious and easily irritated mood; loosely associated thought process. The VA examiner also indicated that the Veteran was casually groomed, and presented with a variable affect. The VA examiner further indicated that the Veteran denied delusions, hallucinations, and suicidal or homicidal ideations. The VA examiner assigned a GAF score of 50. 

In a July 2012 VA treatment record, the VA clinician indicated the Veteran presented with up and down mood with an anxious and easily irritated mood, and a rapid speech pattern. The VA examiner also indicated that the Veteran was casually groomed, and presented with a happy affect, and a logical and goal-directed thought process. The VA examiner further indicated that the Veteran denied delusions, hallucinations, and suicidal or homicidal ideations. The VA examiner assigned a GAF score of 54. 

In a December 2012 VA treatment record, the VA clinician indicated the Veteran presented as emotionally labile with an easily irritated mood. The VA examiner also indicated that the Veteran was casually groomed, and presented with a happy affect, a normal speech pattern, and a goal-directed thought process. The VA examiner further indicated that the Veteran denied delusions, hallucinations, and suicidal or homicidal ideations. The VA examiner assigned a GAF score of 48. 

In a March 2013 VA treatment record, the VA clinician indicated the Veteran presented with an easily irritated, but improved mood. The VA examiner also indicated that the Veteran was casually groomed, and presented with a happy affect, a normal speech pattern, and a goal-directed thought process. The VA examiner further indicated that the Veteran denied delusions, hallucinations, and suicidal or homicidal ideations. The VA examiner assigned a GAF score of 50.

In a November 2013 VA treatment record, the VA clinician indicated the Veteran presented with a manic-type mood, an anxious affect, and variable thought processes (at times circumstantial, and at other times goal-directed). The VA examiner also indicated that the Veteran was neatly groomed, and presented with a cooperative and pleasant behavior. The VA examiner further indicated that the Veteran denied delusions, hallucinations, and suicidal or homicidal ideations. The VA examiner assigned a GAF score of 50.

During the January 2014 Board hearing, the Veteran testified that he experiences symptoms of depressed mood, anxiety, irritability, and a lack of motivation. In addition, the Veteran's wife testified that the Veteran demonstrated signs of anger, rage, forgetfulness, and social isolation. Finally, the Veteran testified that he has experienced symptoms of suicidal ideation on more than one occasion, specifically noting that if his wife were to file for divorce, "the only way out is suicide." See Hearing Transcript p. 8. 

In weighing the evidence, the Board finds that for the entire rating period under appeal, the Veteran's depressive disorder has been manifested by disturbances of motivation and mood, recurrent anxiety and panic attacks, abnormal speech patterns, memory impairment, and difficulty in establishing and maintaining effective work and social relationships, which more closely approximate a 50 percent disability rating. The Veteran's depressive disorder has been noted to be uniformly manifested in symptoms of depressed mood, decreased motivation, irritability, emotional lability, and circumstantial speech. In addition, at times, the Veteran has demonstrated impaired thought processes, impaired memory, and heightened anxiety. 

As noted above, a GAF score must be considered in light of the actual symptoms of a veteran's disorder, which provide the primary basis for the rating assigned. The lowest GAF assigned to the Veteran's psychological profile during the rating period on appeal was 48, which was assigned on one occasion in December 2012. The majority of the GAF scores assigned to the Veteran's psychological profile during the rating period were between 50 and 60. A GAF score of 50 represents the upper limit of severe symptoms, and scores between 51 and 60 indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. In this regard, a GAF score between 50 and 60 is consistent with the criteria for a 50 percent rating.

In review of all the evidence of record, the Board finds that the September 2010 VA examination report reflects a less severe symptomatology than depicted in the VA and private treatment records. Specifically, the September 2010 VA examiner indicated that the Veteran presented with a normal affect, normal speech pattern, normal insight and judgment, no memory impairment, and no anxiety. Furthermore, the VA examiner indicated that the Veteran's symptoms of depressed mood and social isolation were mild and infrequent. In contrast, VA and private treatment records reflect that the Veteran's symptoms of depressed mood and social isolation are more persistent in nature. In addition, these treatment records indicate that the Veteran demonstrates a lack of motivation; speech patterns that are often rapid, circumstantial, and tangential; an often anxious and irritable mood; a loosely associated thought process; and difficulty in maintaining effective social relationships, particularly with his daughters. 

Therefore, in consideration of all the evidence of record, the Board finds that the Veteran's symptomatology more nearly approximates occupational and social impairment with reduced reliability and productivity. As such, the Board finds that during the entire rating period under appeal, the Veteran's depressive disorder has been manifested by symptomatology more nearly approximating the criteria required for a 50 percent disability rating under Diagnostic Code 9434. 38 C.F.R. §§ 4.3, 4.7, 4.130. 

The weight of the evidence demonstrates that the criteria for an initial disability rating in excess of 50 percent for the Veteran's service-connected depressive disorder have not been met for the entire rating period under appeal. Specifically, during the appeal period, the Veteran's depressive disorder has not been manifested by symptomatology more nearly approximating occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals with interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression; spatial disorientation; or an inability to establish effective relationships, as required for a 70 percent disability rating under Diagnostic Code 9434. 38 C.F.R. § 4.130. 

In reviewing the criteria for a 70 percent rating and determining whether an evaluation in excess of 50 percent is warranted, the evidence of record reflects that the Veteran's depressive disorder may manifest in symptoms of suicidal ideation. In this regard, at the January 2014 Board hearing, the Veteran testified that he experiences suicidal thoughts, primarily linked to the possibility of a divorce from his wife. In addition, the Veteran's private psychologist endorsed symptoms of suicidal ideation on two separate occasions: in August 2006, and in March 2010. As discussed above, however, the only documented symptom of suicidal ideation is in the August 2006 private treatment record, which pre-dates the Veteran's claim of service connection by four years. 

In addition, the evidence of record demonstrates that the Veteran has consistently presented without any of the other symptoms listed as criteria for the 70 percent disability rating under Diagnostic Code 9434. 38 C.F.R. § 4.130. While the presence or absence of these symptoms is not determinative, the Board finds that the lack of these symptoms to be reflective of the current severity of the Veteran's symptomatology. The evidence of record consistently reflects that the Veteran does not experience obsessional rituals that interfere with routine activities; does not experience near-continuous panic or depression affecting his inability to function independently, appropriately, and effectively; does not experience impaired impulse control; does not experience spatial disorientation; and maintains an appropriate personal appearance and hygiene. Further, while the Veteran has often demonstrated rapid, circumstantial, and tangential speech, his speech has not been described as illogical, obscure, or irrelevant. Based on the above, the Board finds that the Veteran's symptomatology does not more nearly approximate the criteria for the higher 70 percent rating for depressive disorder under Diagnostic Code 9434 for any period. 38 C.F.R. §§ 4.3, 4.7. 

For these reasons, and resolving all resolving doubt in favor of the Veteran, the Board finds that the evidence supports an initial disability rating of 50 percent, but no higher, for depressive disorder. The Board further finds the weight of the evidence is against a higher disability rating in excess of 50 percent. As the preponderance of the evidence is against the claim for this portion of the staged rating (a higher initial disability rating in excess of 50 percent), the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

Extraschedular Consideration

The Board has considered whether referral for an extraschedular evaluation is warranted. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2014). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Fanning v. Brown, 4 Vet. App. 225, 229 (1993). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the Rating Schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008). 

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the Rating Schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors included "marked interference with employment" and "frequent periods of hospitalization"). When the Rating Schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step - a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

Further, according to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extraschedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or the "combined effect" of multiple service-connected disabilities that result in a "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presentation demonstrates a disability profile that is not adequately captured by the schedular ratings for the service-connected disabilities. 

The Board finds that the symptomatology and impairment caused by the Veteran's depressive disorder are specifically contemplated by the schedular rating criteria (General Rating Formula for Mental Disorders at 38 C.F.R. § 4.130), and no referral for extraschedular consideration is required. The schedular rating criteria, Diagnostic Code 9434, specifically provide for disability ratings based on a combination of history, symptoms, and clinical findings. In this case, considering the lay and medical evidence, the Veteran's depressive disorder has been manifested in disturbances of motivation and mood, recurrent anxiety and panic attacks, abnormal speech patterns, memory impairment, and difficulty in establishing and maintaining effective work and social relationships. The levels of occupational and social impairment are also explicitly part of the schedular rating criteria. 

The GAF scores are incorporated as part of the schedular rating criteria as they tend to show the overall severity of symptomatology or overall degree of impairment in occupational and social functioning. Moreover, all of the symptomatology associated with the Veteran's depressive disorder is contemplated by the schedular rating criteria, which rates by analogy psychiatric symptoms that are "like or similar to" those explicitly listed in the schedular rating criteria. Mauerhan, 16 Vet. App. at 443. There remains no depressive disorder symptom or impairment that is not explicitly contemplated by the schedular rating criteria, or rated like or similar to the schedular rating criteria, and that has not been considered in the overall assessment of occupational and social impairment as reflected by the GAF scores assigned, which the Board has weighed and considered in determining the appropriate ratings to assign in this case for the respective periods. 

Further, the Veteran has not asserted, and the evidence of record has not suggested, any combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. As such, and in the absence of exceptional factors associated with the Veteran's depressive disorder, the Board finds that the Rating Schedule is adequate to evaluate the Veteran's current disability profile and symptomatology. Therefore, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. Thun, 22 Vet. App. at 115-16; Johnson, 762 F.3d 1362; see also Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

The evidence of record demonstrates that the Veteran has been unemployed since June 2011. However, during the January 2014 Board hearing, the Veteran specifically noted that he was not seeking a total disability rating based on individual unemployability (TDIU). See Hearing Transcript p. 20. As such, a claim for a TDIU is not raised by the record. 


ORDER

Entitlement to an initial disability rating of 50 percent, but no higher, for depressive disorder, is granted. 



____________________________________________
K. J. Alibrando 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs